UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
LCSI HOLDINGS, LLC, WILMINGTON,
LUCERNE BRANCH and LACHMAN
CONSULTANT SERVICES, INC.,                 Case No. 19-5304

                Plaintiffs,

      v.                                __COMPLAINT__

THERAPURE BIOPHARMA, INC., CATALYST
FUND LIMITED PARTNERSHIP II, and THE
CATALYST CAPITAL GROUP, INC.

                Defendants.
-----------------------------------------------------------------X

        LCSI Holdings, LLC, Wilmington, Lucerne Branch ("LCSI") and Lachman Consultant

Services, Inc. ("LCS" and together with LCSI, "Lachman" or "Plaintiffs"), by their attorneys,

Cuddy & Feder LLP, as and for their Complaint against Therapure Biopharma, Inc.,

("Therapure"), Catalyst Fund Limited Partnership II ("Catalyst Fund"), and The Catalyst Capital

Group, Inc. ("Catalyst" and collectively with Therapure and Catalyst Fund, "Defendants")

respectfully allege as follows:

<u>Facts Common To All Claims for Relief</u>

        1.     Lachman brings this action to recover more than $3 million due and owing to it

under multiple agreements between Lachman and Therapure, which agreements Therapure entered

into and ultimately breached at the direction and under the control of Catalyst.

        2.     In short, Therapure, an entity which, upon information and belief, does not function

independently, but is completely controlled and dominated by Catalyst, retained LCSI to provide

consulting services in or about May 2018 (the "Consulting Agreement"). Therapure soon thereafter

fell behind on payments to LCSI. Upon information and belief, Therapure is fully dependent upon

funding from Catalyst to fund day to day working capital needs of Therapure.  Still needing LCSI's

valuable services, Therapure represented and promised LCSI, in a letter agreement in December 2018, to undertake a payment plan whereby it would bring its balance, which stood at approximately $3.4 million as of late November 2018, current (the "Letter Agreement" and together with the Consulting Agreement, the "Agreements").

3.     After Therapure executed the Letter Agreement, Catalyst provided the necessary funding to Therapure and authorized Therapure to make the first two payments due under the Letter Agreement, to which LCS is an express third-party beneficiary. After funding the initial payments due under the Letter Agreement, Catalyst, upon information and belief, ceased providing any further funding and directed Therapure that no further payments were to be made to Lachman.

4.     Lachman has made both informal and then formal demands that Therapure comply with its contractual obligations and pay Lachman the money that Therapure does not dispute it owes to Lachman. But, Therapure has stated that Catalyst has refused to provide the necessary funding to Therapure and authorize it to make payments to Lachman, thus necessitating this suit.

5.     Accordingly, Lachman brings this breach of contract action against Therapure and Catalyst Fund and Catalyst, the parties that completely dominate and control Therapure, so that, particularly with respect to the transactions at issue herein, Therapure has no independent identity and only acts at the direction of Catalyst.  Furthermore, Therapure relies on Catalyst to make all decisions and provide the necessary funding for its day to day working capital needs.  The domination and control of Therapure by Catalyst is evident in the fact that the Chairman of the Board of Therapure, Gabriel de Alba, is also a founder and Managing Director and Partner of Catalyst, as well as Newton Glassman, who is also on the Board of Therapure and a founder and Managing Director and Partner of Catalyst.

4014740.v5

6.      In this suit, Lachman seeks to recover approximately $3.1 million to which it is owed under the black and white terms of the Agreements, along with its attorneys' fees to which Lachman is entitled under the Letter Agreement.

<u>The Parties, Jurisdiction and Venue</u>

7.      Plaintiff LCSI is a Delaware limited liability company having an address of 1600 Stewart Avenue, Westbury, New York 11590. The sole member of LCSI is LCS. Accordingly, for diversity purposes, LCSI has the citizenship of LCS.

8.      Plaintiff LCS is a corporation organized and created under the laws of New York having an address at 1600 Stewart Avenue, Westbury, New York 11590.

9.      LCS and LCSI provide consulting services in the areas of compliance, regulatory, and science and technology to pharmaceutical companies to assist with internal compliance issues, obtaining regulatory approvals, and the development of drugs, biologics, and devices.

10.     Defendant Therapure is a corporation organized under the laws of Canada, with a principle place of business at 2585 Meadowpine Boulevard, Mississauga, Ontario.

11.     Upon information and belief, Therapure operates in the Canadian and United States markets and specializes in biotherapeutics, including the development and manufacturing of complex biologics, and proprietary drug development.

12.     Upon information and belief, Therapure transacts business and regularly does and/or solicits business in and derives substantial revenue from services rendered in New York.

13.     Upon information and belief, Therapure is wholly owned by Catalyst Fund, which is a limited partnership organized under the law of Canada.

14.     Upon information and belief, Catalyst Fund's sole partner is Catalyst. Accordingly, for diversity purposes, Catalyst Fund has the citizenship of Catalyst.

4014740.v5

15.     Upon information and belief, Catalyst is a corporation organized under the laws of Canada with a principal place of business at 181 Bay Street, Suite 4700, Bay Wellington Tower Brookfield Place, Toronto, Ontario.

16.     Catalyst is a private equity investment firm specializing in investing in distressed assets.

17.     Upon information and belief, Catalyst's model is to purchase distressed companies, like Therapure, gain complete control of those companies and subsequently sell them after improving their financial condition.

18.     Upon information and belief, both Catalyst and Catalyst fund transact and solicit business in New York.

19.     Both Catalyst and Catalyst Fund had reason to know that in ceasing to provide funding for Therapure to pay monies owed to LSCI and in directing Therapure to make no further payments under the Agreement to LCSI, their conduct would have impacts within the State of New York.

20.     Both the Consulting Agreement and the Letter Agreement are expressly governed by New York law.

21.     The Letter Agreement recites that any action arising out of or related to the Letter Agreement "shall be subject to the exclusive jurisdiction of the state or federal courts located in the County of New York, State of New York, USA."

22.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).

4014740.v5

Catalyst's Control of Therapure

23.     Upon information and belief, through Catalyst Fund, Catalyst purchased Therapure in or around 2006.

24.     Upon information and belief, Catalyst has complete operational control over Therapure.

25.     Upon information and belief, Therapure's board of directors is comprised of two directors, Newton Glassman and Gabriel de Alba, who are responsible for the management and control of Therapure.  Mr. De Alba is the Chairman of the Board of Therapure and a founder and Managing Director and Partner of Catalyst.  Mr. Glassman is also a Director on the Board of Therapure, as well as a founder and Managing Director and Partner of Catalyst.

26.     Upon information and belief, Mr. Glassman is the managing partner of Catalyst and Mr. De Alba is the managing director and a partner of Catalyst.

27.     Upon information and belief, Catalyst is involved and controls the day to day operations of Therapure.  Any decisions regarding day to day working capital must be approved by and requires funding from Catalyst.  Based upon representations made by Therapure employees to Lachman, Catalyst completely controlled the operations of Therapure with respect to the transactions at issue herein. Specifically, Catalyst directed Therapure whether to comply with the Agreements and make payments to Lachman and ultimately directed Therapure to cease making payments and/or refused to authorize and enable Therapure to make payments required under the Agreements.

28.     Therapure repeatedly represented to Lachman that payments due under the Agreements needed to be authorized and funded by Catalyst.

4014740.v5

<u>The Consulting Agreement</u>

29.     In early 2018, Paul Stojanovski, a vice president at Therapure, approached Lachman regarding Therapure's interest in retaining Lachman to provide consulting services.

30.     Therapure and LCSI then executed the Consulting Agreement, with an effective date of May 1, 2018, in which Therapure retained LCSI to serve as a consultant to Therapure. The Consulting Agreement recited that Therapure would compensate LCSI on an hourly rate basis, plus expenses as identified in the Agreement, and set forth LCSI's hourly rate structure.

31.     Nick Green, president and CEO of Therapure, executed the Consulting Agreement on behalf of Therapure.

32.     The Consulting Agreement is governed by the laws of New York.

33.     Around the time of execution of the Consulting Agreement, Therapure and LCSI also executed a proposal for services, which detailed the services which LCSI would perform for Therapure.

34.     The proposal was for eight consultants from LCSI to work full time on the Therapure project. The proposal set forth that the anticipated monthly cost to LCSI would be approximately $700,000.

35.     The proposal identified May 1, 2018 as the start date for LCSI's work. The proposal was agreed to and executed by Nick Green on behalf of Therapure.

36.     Thereafter, LCSI commenced consulting services for Therapure. LCSI's consultants worked thousands of hours each month for Therapure and Therapure fell behind on its payments due to LCSI per the Consulting Agreement.

37.     Upon information and belief, Catalyst had direct knowledge of terms of the Consulting Agreement and was the party responsible for providing funds so that Therapure could

6

meet its payment obligations thereunder. Accordingly, upon information and belief, it was only because Catalyst decided to stop funding the payments due to Lachman under the Consulting Agreement that Therapure breached the Consulting Agreement.

<u>The Letter Agreement</u>

38.     On or about November 21, 2018, Therapure, with, upon information and belief, Catalyst's knowledge and approval, and LCSI came to an understanding on how to address Therapure's delinquent balance, which at that time exceeded $3.4 million, while permitting Therapure to continue to receive LCSI's consulting services.

39.     That understanding was later codified in the Letter Agreement, executed on December 14, 2018, which Letter Agreement, upon information and belief, was reviewed and approved by Catalyst.  Nick Green and David Long both confirmed that the Letter Agreement was sent to Catalyst for review and approval.

40.     The Letter Agreement recited that through October 31, 2018, Therapure had failed to pay to LCSI $3,420,117.86 (the "Outstanding Balance"), which was due and owing under the Consulting Agreement. The Letter Agreement further recited that Therapure had agreed to a payment plan, which LCSI had accepted as a condition for LCSI to continue to provide services on behalf of Therapure under the Consulting Agreement.

41.     The Letter Agreement acknowledged that on November 21, 2018, Therapure had made an initial $400,000 payment to LCSI leaving balance of $3,020,117.86. Per the Letter Agreement, Therapure agreed to make an additional $400,000 payment on or before December 12, 2018 and then make payments of $500,000 starting January 2, 2019 and on monthly thereafter.

42.     With respect to the initial $400,000, Nick Green, Therapure CEO, made it expressly known that the initial $400,000 was approved and funded by Catalyst stating with respect to the

4014740.v5

initial payment that the request "was sent to our investors to sign the wire as soon I received your confirmation."

43.     With respect to the additional $400,000 payment due December 12, 2018, both Nick Green and David Long, Therapure's CFO, informed Lachman that the second payment of $400,000 was also approved and wired from Catalyst to Therapure to remit to Lachman in accordance with the Letter Agreement.

44.     With respect to the first payment of $500,000 starting January 2, 2019, David Long, Therapure CFO, stated "I have requested funding from Catalyst to cover payroll and critical vendor payments for next week.  No response as of yet.  I will update you as soon as I can.  I can say it is very unlikely I will be in a position to pay the Feb. payment of $500K."

45.     Therapure also agreed in the Letter Agreement that in addition to the payments it was obligated to make towards the Outstanding Balance, Therapure would be required to make timely payments for all ongoing services performed by LCSI per the terms of the Consulting Agreement.

46.     In other words, the Letter Agreement required Therapure to pay future invoices per the terms of the existing Consulting Agreement and to make monthly payments of $500,000 to address the more than $3 million Outstanding Balance.

47.     The Letter Agreement stated that LCS was an intended third-party beneficiary of that agreement and entitled to enforce the provisions of the Letter Agreement as if it was a party itself.

48.     The Letter Agreement recited that it would be governed by New York law and any action or proceeding arising out of or related to it would be subject to the exclusive jurisdiction

4014740.v5

state or federal courts in New York County, New York. It further provided that in any action to enforce its terms, the prevailing party would be entitled to attorneys' fees.

49.     After receiving approval from Catalyst, Nick Green (president and CEO) and David Long, chief financial officer, executed the Letter Agreement on behalf of Therapure.

50.     After making the first two $400,000 payments due under the Letter Agreement, Therapure defaulted on its payment obligations for both payments towards the Outstanding Balance, and for payments for services that LCSI had performed and invoiced for after entering the Letter Agreement.

51.     Throughout January and February, Lachman requested payment on multiple occasions, both directly and then through outside counsel. Therapure informed Lachman that it was waiting on Catalyst to authorize and fund payments to Lachman.

52.     Upon information and belief, Catalyst directed Therapure to cease making payments to Lachman and/or refused to authorize and provide Therapure with the funds necessary to make payment to Lachman. Neither Therapure nor Catalyst has made any payments since making a partial payment in January against the Outstanding Balance.

53.     In addition to ceasing making payments towards the Outstanding Balance, Therapure has not made any payment for work that LCSI performed in November and December 2018.

54.     As of the date of this filing, a total of $3,091,128.59 is due to Lachman, which is comprised of $2,370,117.86 remaining on the Outstanding Balance and $721,010.73 for November and December 2018 services.

4014740.v5

<u>First Claim For Relief</u>

(For Breach of Contract – Consulting Agreement on behalf of LCSI)

55.     Lachman, repeats, realleges and reavers all prior allegations as if set forth fully herein.

56.     Therapure and LCSI are parties to the Consulting Agreement.

57.     Upon information and belief, Catalyst Fund and Catalyst were the parties that determined whether Therapure would meet its payment obligations under the Consulting Agreement.

58.     In the Consulting Agreement, LCSI agreed to perform consulting services for Therapure and Therapure agreed to compensate LCSI for those services in accordance with the terms of the Agreement.

59.     LCSI performed its obligations under the Consulting Agreement.

60.     In breach of its contractual obligations, Therapure failed to pay LCSI $3,091,128.59, which is due and owing under the terms of the Consulting Agreement.

61.     Upon information and belief, Catalyst Fund and Catalyst refused to provide funding for Therapure to make payments due under the Consulting Agreement and directed Therapure not to comply with the terms of the Consulting Agreement.

62.     As a direct and proximate result of the actions of Defendants, Defendants are liable to LCSI for all its damages together with all expenses, costs and interest thereon, incurred by LCSI in connection with same, together with such other and further relief as the Court deems just and proper.

4014740.v5

## Second Claim For Relief

### (For Breach of Contract – Letter Agreement on behalf of LCSI and LCS)

63.    Lachman, repeats, realleges and reavers all prior allegations as if set forth fully herein.

64.    Therapure and LCSI are parties to the Letter Agreement.

65.    LCS is an express third-party beneficiary of the Letter Agreement.

66.    Upon information and belief Catalyst Fund and Catalyst reviewed and approved the terms of the Letter Agreement.

67.    In the Letter Agreement, LCSI agreed to continue to perform consulting services for Therapure in exchange for Therapure (1) complying with a payment plan to bring current its Outstanding Balance, and (2) pay invoices for ongoing work as they came due per the terms of the Consulting Agreement.

68.    Upon information and belief, Catalyst Fund and Catalyst were the parties that determined whether Therapure would comply with the Letter Agreement and make the payments required thereunder.

69.    LCSI performed its obligations in the Letter Agreement.

70.    Therapure breached the Letter Agreement by, *inter alia*, failing to make monthly payments due to LCSI to be applied towards the Outstanding Balance, and failing to pay new invoices for ongoing work as they came due resulting in a total amount due and owing to Lachman of $3,091,128.59.

71.    Upon information and belief, Catalyst Fund and Catalyst refused to provide funding for Therapure to make payments due under the Letter Agreement and directed Therapure not to comply with the terms of the Letter Agreement.

72.     As a direct and proximate result of Defendants' actions, Defendants are liable to Lachman for all its damages together with all expenses, costs and interest thereon, including Lachman's attorneys' fees, incurred by Lachman in connection with same, together with such other and further relief as the Court deems just and proper.

WHEREFORE, Lachman prays for an Order and Judgment of this Court as follows:

Damages in an amount to be determined at trial, including but not limited to all amounts outstanding under the terms of the Consulting Agreement and the Letter Agreement, together with all expenses, costs and interest thereon, including reasonable attorneys' fees, and such other and further relief as the Court deems just and proper.

Dated:  White Plains, New York
        June 5, 2019

<div style="margin-left:40%">

**CUDDY & FEDER** LLP
Attorneys for Plaintiffs
445 Hamilton Avenue, 14th Floor
White Plains, New York 10601
(914) 761-1300

By: /s/ *Joshua Kimerling*
        Joshua Kimerling (JK0053)
        Brendan Goodhouse (BG1204)

</div>

4014740.v5